INDEMNITY INS. CO. OF NORTH AMERICA *v.* THE
STAMBERGER CO.

INDEMNITY INS. CO. OF NORTH AMERICA *v.* THE
B. F. HAUSERMAN CO.

INDEMNITY INS. CO. OF NORTH AMERICA *v.* DETROIT
STEEL PRODUCTS CO.

(Decided May 26, 1930.)

*Mr. Joseph B. Keenan,* for plaintiff in error.
*Messrs. Smith, Olds, Smith & Shepherd* and *Mr. Mark A. Copeland,* for defendants in error.

SULLIVAN, J. The above causes are proceedings in error from the common pleas court of Cuyahoga county, but by agreement of counsel will be treated as one, as the issues in each are the same, and therefore this opinion applies to each cause.

The Blair-Ferguson Company, a general contractor, executed a contract with the Bethlehem Steel Company, as owner, and there was a mutual agreement to erect what is known as a Welfare Building, and plant, in Lackawanna, New York, and it became effectual upon the execution of a surety bond to be approved by the steel company. A vital provision therein was that the contractor obligated himself to pay the claims for labor and material and all other claims which might form the basis of liens upon the property.

A further provision of the contract is as follows:

"The Contractor shall contemporaneously with the execution of this agreement, or within ten (10) days thereafter, execute and deliver a bond in the penal sum of $91,500.00 payable to the company, with surety or sureties satisfactory to the company, conditioned that the contractor will duly and punctually perform all of its obligations hereunder in full accordance with the terms and provisions hereof. This agreement shall not be binding upon the company unless and until such bond shall have been executed and delivered to it within said period of ten (10) days. The premium on said bond is to be paid by the contractor."

The contract was executed by the Bethlehem Steel Company and then and thereupon forwarded to the Blair-Ferguson Company, at Cleveland, Ohio, which company then and there executed the same, and thereupon the bond provided for in the contract was executed by the Blair-Ferguson Company and the plaintiff in error, the Indemnity Insurance Company of North America at Cleveland, Ohio. Thus we observe that both the contract and bond were executed in Cleveland, Ohio, with the immaterial exception that the Bethlehem Steel Company drafted and executed the contract at Bethlehem, Pennsylvania, but immediately forwarded it to Cleveland, where the instrument was consummated as a legal document by the signature of the Blair-Ferguson Company.

The close relationship of the two instruments of writing is to be noted by the reading of the following paragraph from the bond itself:

"Whereas, the above bounded Principal has entered into a certain written contract with the above named obligee, dated the 22nd day of August, 1927, for the erection and completion of a Welfare Building at the Lackawanna Plant, Lackawanna, N. Y., in accordance with plans and specifications under contract x-963, *which contract is hereby referred to and made a part hereof as fully and to the same extent as if copied at length herein.*"

From a reading of the above provision we find from the language a fact which has a vital bearing upon the issue, and that is that the provisions of the contract and the bond are merged, as that is the interpretation of the clause, "which contract is hereby referred to and made a part hereof as fully and to the same extent as if copied at length herein."

This provision has a decisive bearing, as the suit at bar is for recovery upon the bond which was executed by both parties to the same in Cleveland, and it must be kept in mind that there was a provision in the contract obligating the general contractor to pay for all labor and material; and in connection with this payment for labor and material, in addition to the contract having been executed in Ohio, the invoices for payment, to a considerable extent at least, were sent to Ohio for payment; and we must also keep in mind that, the bond and the contract being merged, the surety was bound to see that the contractor fulfilled the terms of the same, and these terms were of such a nature that it is clear that the contract was for the benefit of the subcontractor and materialmen, the defendants in error herein.

It is urged by the plaintiff in error, the insurance company, that notwithstanding the facts noted, the laws of the state of New York are controlling in the case at bar, because it is asserted that in that state the performance of the terms of the contract was to take place. The defendants in error, however, insist that under the facts, as well as the law, the instruments of writing in question having been executed in Ohio, the laws of Ohio govern the interpretation of the contract and bond and the issues raised herein, and they especially urge that they are clothed with that legal status which gives third persons for whose benefit the contract is made the right to recover even though they are not actual parties to the contract.

From the facts herein noticed, and others which appear in the record, it is our judgment that the laws of Ohio govern and control, under the decision of the Supreme Court of Ohio in the case of *Royal In-*

demnity Co. v. *Northern Ohio Granite & Stone Co.*, 100 Ohio St., 373, 126 N. E., 405, 12 A. L. R., 378; the second paragraph of the syllabus reading as follows:

"A surety of the character described [a corporate surety for compensation], which, by its contract, assures the faithful performance thereof by a principal who agrees to furnish labor and materials on a structure, at his own risk, cost and expense, is liable to a materialman who furnishes material, in default of the principal's payment therefor. *Cleveland Metal Roofing & Ceiling Co.* v. *Gaspard et al.*, 89 Ohio St., 185 [106 N. E., 9, L. R. A., 1915A, 768, Ann. Cas., 1916A, 745], overruled."

It is urged that the citation just noted is not authoritative because of the decision of the same court in the case of *Cleveland Window Glass & Door Co.* v. *National Surety Co.*, 118 Ohio St., 414, 161 N. E., 280; but we do not see any distinction that would destroy the force and effect of the clause in the contract at bar whereby the surety guarantees that the contractor will pay for labor and materials. Whether such an obligation and burden are assumed in a private or a public contract is, in our judgment, immaterial. The real question is the obligation itself, and the principle of law becomes just as effective in one case as in the other. It is our judgment that a reading of the syllabus in 118 Ohio St., 414, 161 N. E., 280, *supra,* shows that the law laid down therein is not inconsistent with the views we herein express. Certainly the holding is not against the theory that third parties can recover under a contract like the one at bar, made for their benefit, even if the terms of the contract are ambiguous, which is

not so in the instant case, the terms of the contract not admitting of two interpretations; but, if they did, that one should be adopted which furnishes the greater indemnity. This holding shows the tendency of the courts to hold principals under contracts and to give the right to third parties to sue for recovery where it clearly appears that they are beneficiaries under the terms of the contract.

From a reading of the contract and bond together, in the case at bar, it seems clear that it was the intention of the parties under the terms to assume liability to the laborers and materialmen for whose benefit it plainly appears the instruments of writing were executed.

We quote the syllabus from 118 Ohio St., 414, 161 N. E., 280, as follows:

"A bond of indemnity should receive a reasonable construction in order to carry out the intention of the parties as expressed by the language used. Such bond cannot be held to inure to the benefit of one not a party thereto nor designated therein, unless it clearly appears from its terms that it was intended that such party should be the beneficiary thereof, or the terms employed therein are ambiguous and susceptible of two interpretations which seem equally fair, in which event that interpretation should be adopted which affords the greater indemnity."

In the case at bar the defendants in error sue for the payment of debts due for material furnished for the structure in New York, and the right of such claimants so to sue under facts like those existing at bar finds authority in a decision of the Court of Appeals of Jackson county, Ohio, in the case of *Globe Indemnity Co.* v. *Jackson Mill & Lumber Co.,*

24 Ohio App., 1, 156 N. E., 528. The syllabus holds that under the terms of a bond securing performance of a contract to erect a structure, the bond providing that it shall be void if all claims for material are paid, otherwise to remain in full effect, suit may be maintained against the surety to recover the amount due on the materials used in construction, on default of the principal, and the basis of the holding is that the provisions of the bond govern, and not the character of the contract. The provisions of the bond are determinative of the surety's liability. We quote the following from the opinion of the court, at page 2 of 24 Ohio App., 156 N. E., 528, 529:

"It is contended by the indemnity company that under the authority of *Cleveland Metal Roofing & Ceiling Co.* v. *Gaspard,* 89 Ohio St., 185, 106 N. E., 9, L. R. A., 1915A, 768, Ann. Cas., 1916A, 745, the lumber company may not maintain this action. It is urged further in support of this contention that there is and must be a clear distinction made between the rights of materialmen under private contracts and their rights under public contracts. On the other hand, the lumber company relies upon the more recent case of *Royal Indemnity Co.* v. *Northern Ohio Granite & Stone Co.,* 100 Ohio St., 373, 126 N. E., 405, 12 A. L. R., 378, wherein the Supreme Court in its opinion not only expressly disapproves the doctrine of the Gaspard case, but in the syllabus states that the Gaspard case is overruled. Now while it may be true that the Gaspard case dealt with a controversy growing out of an alleged liability on a bond given to secure the performance of a private contract, while in the Granite Company case a public contract was involved, the Supreme

Court in the later case made no such distinction as it is urged should be made here, and we are therefore bound to assume that the court did not recognize the distinction claimed.''

There are many other authorities, and all are to the effect that materialmen have a right to recover upon a bond where the conditions are in substance like those at bar. The contractor in the instant case obligates himself to pay for the labor and material going into the Lackawanna building. The bond is part of the contract. It is impossible in this merger to separate the interests of the materialmen from the interests of the contractor, and this being so it is conclusive that the instruments of writing were not only for the benefit of the contractor but for the benefit of the materialmen to whom they became obligated under the provisions of the contract, and the prime purpose of the execution of the bond by the principal and the surety was to fulfill the obligation of the contractor to the materialmen, and there is no other intention to be gathered from both the instruments here in question other than that the principal and the surety were making the materialmen beneficiaries to the contract.

The provisions lead inevitably to such an intent, and therefore the creation of the right on the part of the materialmen to recover under a contract made for their benefit, even though they were not actual parties thereto.

In 118 Ohio State, *supra,* we must bear in mind in considering its applicability to the question at bar the fact that the provisions of the mortgage in that case were not made part of the bond; the condition being that if the building was completed free of

liens then the obligation under the surety bond would be void. In the instant case, as before noted, the contract and bond became one instrument by the act of all the parties thereto.

It is our judgment that the Supreme Court never intended to limit the effect of the *Royal Indemnity Company case, supra,* by its decision in the *Cleveland Window Glass & Door Company case, supra.* The principles which the court rejected in the *Cleveland Window Glass case* in no manner form the basis for the conclusion in the instant case, which embodies all the requisites necessary to impose upon the surety company liability.

It may be noted from what has been said thus far that it is our judgment that the bond sued upon, and the contract in question, are to be construed and interpreted according to the laws of Ohio and not the laws of New York. That the documents in question were executed in Ohio there can be no question; that at least part of the performance of the provisions of the contract was to be in Ohio is equally true, for the payment in Ohio for the materials furnished on the New York building, by virtue of the invoices sent here, is as much a performance of the terms of the contract as any physical act done in New York upon the structure. The residences in Ohio, such as the locations of the Blair-Ferguson Company and of the agent of the bonding company, have a vital force in answering the question as to whether the Ohio or New York laws should govern, because these facts noted, as well as others in the record, show that at least part of the performance was in Ohio, and an inference clearly ascertainable from the record is that the financial arrangements

concerning the provisions of the contract took place in Ohio, because of the locus of the agency of the bonding company and the headquarters of the Blair-Ferguson Company.

Thus it will be seen that the facts and circumstances of the record are one of the reasons for determining that the law of Ohio governs, and it must not be forgotten in the determination of this question that the contracting parties at the time of the execution of the instruments were under the shadow and shelter of the Ohio laws and jurisdiction. As to whether the Ohio laws or the New York laws govern in the instant case, recourse must be had to the decisions upon the question of "Conflict of Laws," and from such authorities there is an irresistible deduction, and that is that in cases similar to the one at bar the weight of authority is in favor of the laws of the state where the contract is made, and from an analysis of the question it appears to be perfectly clear that such a conclusion is not only logical but sensible. Why should the laws of a foreign state govern when the only reason assigned is that the work is performed there? It seems to us that the determining element is that the laws of the state wherein the parties meet, discuss terms, and execute the agreement, should be decisive, because it is fair to assume that the parties themselves would be acquainted with and amenable to those laws, and it is not a violent assumption to say that, acting under the environment of those laws, the laws themselves would become a determining factor in the transaction. This question has been before the courts so many times, with varying resultant opinions, that the stage is now reached in our jurispru-

dence where the tendency of the courts in cases like the one at bar is to construe and interpret the contracts according to the law of the place where they are formulated and executed, especially where such a place is the domicile, business or otherwise, of the contracting parties, and a noteworthy step in this direction is the construction by the American Law Institute given to these conflicting opinions upon this much-discussed question of law, and it will be noted that in a restatement of the law of the case under this Institute, through Judge Beale, Section 371 provides that ''the law of the place of contracting determines what are the provisions and obligations of a contract.'' So it must be observed that our views coincide with the emphatic trend of the judicial thought of the country as expressed by the American Bar Association, through the instrumentality of the American Law Institute, in performing its mission of a restatement of the law.

Pursuing this branch of the discussion it cannot be disputed that some of the provisions of the contract were to be performed in Ohio and some in New York, and with such a situation we think the language of Mr. Justice Bradley in *Morgan* v. *New Orleans, Mobile & Texas Rd. Co.*, 2 Woods, 244, Fed. Cas., No. 9804 (17 Fed. Cas., 754), is apropos to the case we have here. This case was used by Judge Beale in his restatement of the law, as above noted, and the language of the eminent justice is: ''In this embarrassment, I do not know that I can do better than to fall back on the general rule that a contract is to be governed by the law of the place where it is made.''

The record in the case at bar discloses the con-

flict in the laws between the two states in question, and in order to show that the laws of New York should govern, evidence of the mechanics' lien laws and decisions of the Courts of Appeals and other courts of record of the state of New York were offered by the surety company, and in the face of this conflict, and the fact that the tendency of the decisions is to respect the laws of the state where the contract is made, it would be rather violent, in our judgment, to hold that the weight of the evidence is in favor of the laws and judicial authorities of the state of New York, as against what appears in the record as to the weight of the authorities in favor of respecting the laws of the place where the contract is made. In other words, in a sense, the question is translated into the weight of the evidence, and there is nothing in the record that would warrant a conclusion favorable to the efficacy of the New York statutes and decisions.

We think it is useless to cite these conflicting authorities because from Lord Mansfield, in the case of *Robinson* v. *Bland,* 2 Burr., 1077, and Mr. Justice Story in his ''Conflict of Laws,'' down to Chief Justice Shaw of the Supreme Court of Massachusetts in *Carnegie* v. *Morrison,* 2 Metc., 381 (decided in 1841), and up until the present time, there has been a conflict; but we think the weight of the authorities is in favor of the laws of the place, and we so conclude without specifically citing the pro and con of the doctrine, because it leads nowhere but to the cul-de-sac of confusion and chaos. We cannot ignore general principles, however, and one that is predominant in the case at bar is that the provisions of the bond incorporated in the contract are enforce-

able and effective, and so intended to be, in every jurisdiction, whether it be the state of New York or the state of Ohio. This doctrine was laid down in Story on Conflict of Laws, 267, wherein it is said: "Sureties, endorsers and guarantors are therefore liable everywhere only according to the law of the place of their contract."

In line with our judgment in this discussion, we cite *Garrigue* v. *Kellar,* 164 Ind., 676, 74 N. E., 523, 69 L. R. A., 870, 108 Am. St. Rep., 324; *Barrett* v. *Dodge,* 16 R. I., 740, 19 A., 530, 27 Am. St. Rep., 777. There are numerous other authorities of like nature which it is unnecessary to refer to.

Able counsel for the surety company urges that the *Montana Coal & Coke Co.* v. *Cincinnati Coal & Coke Co.* case, reported in 69 Ohio St., 351, 69 N. E., 613, settles the issue in favor of plaintiff in error; but we distinguish that case from the present case because the suit in this case is upon the bond that was executed in Ohio, where the parties thereto are domiciled, and not upon the contract, although the contract and bond, as before noted, have been translated into a single structure by the provisions and terms of the instrument of writing.

From a reading of the second proposition of the syllabus of 69 Ohio State, *supra,* it will be seen that the basis of the decision is that the parties to the promissory notes by their acts in Ohio, Pennsylvania, and Kentucky, intended that the contract should be performed in Kentucky; but there is no language in the instrument at bar which indicates any such intention, and thus the case noted is not applicable in our judgment.

It cannot be successfully claimed that the bond

executed by the principal and surety in Cleveland, Ohio, was not effective as to the obligations and conditions thereof in any jurisdiction, upon default of the performance of any of the provisions of the contract, and even if this distinction may be said to be substantial, yet, as before noted, there has been a distinct change in the tendency of the courts upon this question of the conflict of laws since January 5, 1904, when the *Montana Coal & Coke Co. case, supra,* was decided, and we think that the facts in the record are sufficient to make it inapplicable to this case.

In the consideration of this case we must bear in mind that the record shows that even as to performance of the provisions of the contract a sufficient proportion of it was performed in the place where the contract was executed, so that the same interpretation as that used by Mr. Justice Bradley, above noted, is available and effective. In other words, according to the record, the bond sued upon and the contract were executed in Cleveland, Ohio, the domicile of the parties, and the headquarters of the principal contractor for the transaction of the business connected with the erection of the building in question in New York, and much of the performance, especially in a financial way, was to be consummated impliedly or expressly in Ohio, and therefore the financial transactions having just as much the character of performance as have the physical acts upon the building in the state of New York, it may well be said from the record that there is justification for holding, not only that the instruments of writing in question were executed in Ohio, but that the provisions of the contract were, to a substantial degree at least, performed in Ohio. This attitude would

250

make immaterial the question as to whether the laws and decisions of the state of New York were in conflict with those of Ohio, because the place of performance would become immaterial, and, while it cannot be claimed that full performance took place in either New York or Ohio, yet the situation is such as makes applicable the language of Mr. Justice Bradley when he said: "In this embarrassment, I do not know that I can do better than to fall back on the general rule that a contract is to be governed by the law of the place where it is made."

Holding these views, the judgment of the lower court in each of the cases is hereby affirmed.

*Judgments affirmed.*

VICKERY, P. J., and LEVINE, J., concur.